UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE VIRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 1699 RWS |
| | ) | |
| KILOLO KIJAKAZI[1], | ) | |
| | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Janice Virant brings this action seeking judicial review of the
Commissioner's decision denying her application for disability insurance under
Title II of the Social Security Act, 42 U.S.C. §§ 401.  Section 205(g) of the Act, 42
U.S.C. §§ 405(g), provides for judicial review of a final decision of the
Commissioner.  Because the Commissioner's final decision is supported by
substantial evidence on the record as a whole, I will affirm the decision of the
Commissioner.

### **Procedural History**

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for
Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by
reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was born in 1967 and filed her applications on September 6, 2017. (Tr. 78, 85.)  She alleges she became disabled beginning September 4, 2017, because of bipolar disorder.   (Tr. 239.)  Plaintiff's insured status expired on March 31, 2019.  (Tr. 23.)  Thus, the relevant period is from September 4, 2017 through March 31, 2019.

Plaintiff's application was initially denied on February 1, 2018.  (Tr. 88-94.) The ALJ held an initial hearing on May 17, 2019, and a second hearing on March 5, 2020, to "resolve conflicts in the record, especially from experts and things." (Tr. 33-75.)  Vocational experts testified at both hearings, as did the plaintiff, and a consulting medical expert, Jeffrey N. Andert, Ph.D., testified at the second hearing. Thereafter, the ALJ issued his decision denying benefits on April 2, 2020.  (Tr. 10-24.)  On September 28, 2020, the Appeals Council denied plaintiff's request for review.  (Tr. 1-6.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. §§ 405(g).

In this action for judicial review, plaintiff contends that the ALJ improperly evaluated her credibility and the opinion of her treating psychotherapist.  She asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt

2

plaintiff's recitation of facts (ECF #21-1) to the extent they are admitted by the Commissioner (ECF #26-1), as well as the additional facts submitted by the Commissioner (ECF #26-1) as they are not contested by plaintiff. Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.   <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). "[Substantial evidence] means – and means only

4

– such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider whether a claimant's

subjective complaints are consistent with the medical evidence. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[2]  When an ALJ gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.   ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 4, 2014.  (Tr. 12.)  The ALJ found that plaintiff had the severe impairment of bipolar disorder which did not satisfy the criteria of a listed impairment. (Tr. 12-13.)  The ALJ determined plaintiff had the residual functional capacity (RFC) to perform a full

---

[2] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

range of work at all exertional levels but with non-exertional limitations. (Tr. 14.) The ALJ limited plaintiff to simple, routine, repetitive tasks with only occasional changes in work setting. (Tr. 14.) The ALJ further found that plaintiff could have no contact with the public and only casual, infrequent contact with coworkers, and she could occasionally interact with supervisors. (Tr. 14-15.) The ALJ also determined that plaintiff could not perform jobs requiring fast-paced production quotas, and any quotas must be based on end-of-workday measurements only. (Tr. 15.)

Based on vocational expert testimony, the ALJ concluded that plaintiff could not perform her past relevant skilled work of registered nurse, but she could perform other work existing in significant numbers in the national economy, including the unskilled work of housekeeping cleaner and dishwasher. (Tr. 22-23, 51-53.) The ALJ therefore found that plaintiff was not disabled. (Tr. 23.)

Plaintiff claims that remand is necessary because the ALJ improperly evaluated her subjective symptoms and the opinion of her treating psychotherapist when fashioning her RFC.

## C.   Credibility Determination

Plaintiff argues that the ALJ's evaluation of her subjective symptoms is not supported by substantial evidence on the record as a whole. RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations." 20

C.F.R. § 404.1545(a).  The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

Here, the ALJ properly formulated plaintiff's RFC only after evaluating her subjective symptoms and extensively discussing the relevant evidence, including her testimony, the medical evidence, and her daily activities.  After consideration of all this evidence, the ALJ concluded that plaintiff retained the capacity to perform a full range of work, with significant modifications tailored to her credible non-exertional limitations.  In so doing, he did not substantially err.

In this case, the ALJ went to extraordinary lengths to fully and fairly develop a complete record before issuing a decision.  He held two hearings (at his own behest) at which plaintiff and vocational experts testified.  In addition to the extensive medical records, two medical experts were also consulted, and one of those experts, Dr. Andert, testified at the second hearing.  The second expert, consulting psychologist Mary Buban, Psy.D., completed a mental source statement of plaintiff's work-related activities after reviewing all the medical evidence, including the treatment notes of plaintiff's treating psychotherapist, Claudia Kachigian, M.D.  (Tr. 522-38.)  The ALJ then provided the plaintiff the

8

opportunity to submit interrogatories to Dr. Kachigian, requesting her opinion on Dr. Buban's findings.  (Tr. 558-59.)  The ALJ also permitted plaintiff to submit interrogatories to Dr. Buban, requesting that she respond to questions posed by counsel and to Dr. Kachigian's interrogatory responses.  (Tr. 544-45.)  It was only after consideration of all this evidence, including a detailed summary of plaintiff's reported symptoms and daily activities, that the ALJ found plaintiff's allegations were not fully consistent with the medical evidence and other evidence in the record.  (Tr. 15-22.)

When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.  20 C.F.R. § 404.1529(c); SSR 16-3p. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall*, 274 F.3d at 1218.  I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-

3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at

1322.  "[T]he duty of the court is to ascertain whether the ALJ considered all of the

evidence relevant to the plaintiff's complaints . . . and whether the evidence so

contradicts the plaintiff's subjective complaints that the ALJ could discount his or

her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th

Cir. 2004).  It is not enough that the record contains inconsistencies.  Instead, the

ALJ must specifically demonstrate in his decision that he considered all of the

evidence.  *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).

Where an ALJ explicitly considers the relevant factors but then discredits a

claimant's complaints for good reason, the decision should be upheld.  *Hogan v.

Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

     Here, the ALJ summarized plaintiff's testimony regarding her daily

activities and subjective allegations of her limitations and found plaintiff's

statements about the intensity, persistence, and limiting effects only partially

consistent with the evidence of record.  The ALJ acknowledged plaintiff's reported

symptoms and went on to weigh these allegations against the evidence of record as

required by 20 C.F.R. § 404.1529(c)(3).

     The ALJ thoroughly discussed plaintiff's medical records from plaintiff's

treating psychiatrist, which show that plaintiff had difficulty at times dealing with

situational stressors such as her divorce but was generally able to function with

regular medication adjustments.  (Tr. 15-18.)  *See* 20 C.F.R. § 404.1529(c)(3)(v)

(noting that in assessing a claimant's subjective complaints, an ALJ considers the

treatment the claimant received for relief of her symptoms).  In 2014, plaintiff was

writing a children's book.  (Tr. 16, 332.)  Therapy notes indicated that she had

canceled her book event due to increased symptoms.  (Tr. 16, 342.)  Her provider

tried different combinations of medications to help stabilize her moods.  (Tr. 16,

338, 342-46.)   In January 2015, plaintiff rejected her doctor's suggestion of

treatment using electroconvulsive therapy (ECT), preferring to continue with

medication therapy.  (Tr. 16, 349.)  Plaintiff reported improvement with an

increase of Ativan and socializing for her new book.  (Tr. 16, 349.)  She also

discussed her husband's drinking problems and mentioned that they were in

couples counseling, where he admitted he had never wanted to move to St. Louis.

(Tr. 16, 350.)  In March 2015, plaintiff went on a trip to Colorado to see her

husband, but her visit did not go well.  (Tr. 16, 355.)  She reported having several

good weeks in mid-2015 (Tr. 16, 358, 360), as she socialized (Tr. 359), went on

trips (Tr. 386), and took up sewing classes. (Tr. 366.)

In August 2015, plaintiff's husband sought a divorce.  (Tr. 372.)  In late

September 2015, she said she had a "great week." (Tr. 379.) In October 2015, she

said she had been going out on dates. (Tr. 380.)  In early 2016, plaintiff said she

was "falling in love" with a man and moved in with him.  (Tr. 17, 390, 394.)  She

was doing numerous public events and changed publishers to promote her books. (Tr. 393.)

In September 2016, plaintiff reported improvement in her mood with an adjustment in her Seroquel dosage. (Tr. 17, 409.)  Plaintiff attended pilot classes and graduated from pilot school in December 2016.  (Tr. 17, 418.)

In 2017, Plaintiff reported good days and bad days and her medications were adjusted, but she was able to volunteer with Missouri Conservation (Tr. 434), attend her 50th birthday party in Sonoma (Tr. 437), and go to Maui on a family trip. (Tr. 436.)  In January 2017, she reported that she "loves" piloting, but her medications could limit her flying.  (Tr. 17, 500.)  She was "doing well" with the Lamictal dosage (Tr. 17, 500.)  In May 2017, plaintiff was enjoying going out with friends (Tr. 17, 430.)  In October 2017, plaintiff felt "70% of what she should be," though she did not know "how much of this should be normal" given her current stressors.  (Tr. 17, 492.)  Plaintiff said she got a job with the conservation society. (Tr. 492.)  In December 2017, Plaintiff was doing well with Lamotrigine and was taking a decreased dosage of Ativan for sleep, which she and her psychiatrist were "both happy with."  (Tr. 328)

In March 2018, Plaintiff stated that she was staying in her pajamas, but she admitted that she continued to hike, cook, do business, and go to tap classes. (Tr. 17, 449.)  Plaintiff stated that she was forming a social circle in the St. Louis area.

12

(Tr. 17, 486.)  She reported a low frustration-tolerance and "low-grade depression," but stated she was doing well with medications.  (Tr. 17, 486.)  In May 2018, she reported her depression was a "whole heck of a lot better." (Tr. 17, 484.)  Later that year, she traveled to Switzerland (Tr. 458), and she volunteered with a community fishing project.  (Tr. 17, 450-51, 488.)

In March 2019, plaintiff said she was sick and tearful, as she was feeling overwhelmed about her upcoming wedding.  (Tr. 18, 552.)  However, she moved in with her fiancé and was doing well with her emotional support dog.  (Tr. 18, 471.)  She stated she was sleeping well except when she traveled.  (Tr. 18, 474.)  In May 2019, plaintiff described her days as "very full."  (Tr. 18, 468.)  She exercised about forty minutes a day, fed two horses on her family farm, took care of cats, worked on an online clothing business, and cooked for herself and her husband. (Tr. 18, 468.)  She also visited her brother in Las Vegas, where she went hiking, saw bands, and went to the Hoover Dam.[3]  (Tr. 18, 468.)

The ALJ determined that plaintiff's complaints about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with

---

[3] Plaintiff's insured status expired on March 31, 2019.  However, the ALJ noted that plaintiff's treatment records from June 2019 indicated that plaintiff was having some anxiety and depression, but was feeling better, and that in August 2019 she reported some agitation but also noted that she was going on a cruise and skiing and making new friends.  (Tr. 18.)  Treatment records from July 2019 through December 2019 documenting plaintiff's treatment by James Cho, M.D., showed that plaintiff had good mood and normal range of affect.  (Tr. 569-73.)

the evidence as her medical records demonstrated that her condition improved with

medication adjustments throughout the relevant period.  (Tr. 16).  In addition, the

ALJ found that plaintiff's subjective complaints greatly exceeded the mental status

examination findings, which were normal except for sad mood, slightly loud

speech, fair insight, and circumstantial thought process.  (Tr. 18, 328, 333, 468,

472, 474, 476, 478, 480, 490, 492, 494, 496, 498).  The examinations consistently

showed normal memory and concentration.[4]

Moreover, plaintiff's treatment was routine, consisting of therapy and

medication, and there were no emergency department visits or hospitalizations.

(Tr. 18.) *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (noting that in

evaluating the claimant's subjective complaints, the ALJ properly considered the

claimant's pattern of conservative treatment) (citing *Black v. Apfel,* 143 F.3d 383,

386 (8th Cir. 1998)). Although plaintiff reported an increase in symptoms with

---

[4] On May 13, 2019, Dr. Cho noted that plaintiff "presented herself to my office with a form from
a lawyer requesting I fill it out.  Several of the questions in the form I did not feel comfortable
filling out because I don't follow her for extended durations while she works.  She presented
herself as much worse since the last meeting where she presented as mild in depression and
anxiety.  She mentioned . . . her brother inviting her to Las Vegas, where she went hiking, saw
bands, saw Hoover Dam . . . .  She has a wedding coming up on June 14th.  She told me she is
able to exercise about 40 minutes a day.  She feeds two horses at her family's farm daily, takes
care of cats, then works on a clothing business and cooks for herself and her husband describing
her day as 'very full.'  She told me she's had a few nights where she hasn't slept but last night
slept 10.5 hours.  Against my recommendation she still hasn't seen Dr. Ojile." (Tr. 468.)  Dr.
Cho repeatedly recommended that plaintiff see Dr. Ojile to address her family's sleeping problems.  (Tr.
470, 473, 475, 477, 479, 481, 483.)  An ALJ may properly consider a claimant's failure to follow
prescribed treatment when evaluating the claimant's credibility.  *See Choate v. Barnhart*, 457
F.3d 865, 872 (8th Cir. 2006).

stressors, the record did not support her alleged severity of unpredictability and cycling of symptoms.  (Tr. 18, 46-47, 266.)  Plaintiff admitted that she was "doing well" despite her stressors, as she "[could] handle it but wouldn't have been able to do so before." (Tr. 494.)  Conditions which are controllable or amenable to treatment or medication  are not disabling.  *See Cypress v. Colvin,* 807 F.3d 948, 951 (8th Cir. 2015).

Plaintiff argues that the ALJ erred in determining that her daily activities were inconsistent with her testimony.  But the ALJ was not required to fully credit all of plaintiff's assertions regarding the limitations given her activities, which were far more extensive than one would expect for someone with disabling mental impairments.  (Tr. 16, 18.)  Plaintiff rode and raised horses (Tr. 361, 364, 468), wrote and promoted books (Tr. 332, 393), volunteered for the conservation department (Tr. 50, 70), went out with friends (Tr. 263, 436), and traveled to places like Hawaii and Switzerland (Tr. 436, 468, 556).  In addition, plaintiff obtained her pilot's license and was in the middle of ski patrol training when she testified at the hearing.  (Tr. 418, 41.)  Plaintiff also reported being able to perform personal care activities like dressing and bathing herself.  (Tr. 15, 260.)  She prepared simple meals and did laundry.  (Tr. 15, 261.)  She went shopping, paid bills, and handled a savings account.  (Tr. 262.)  She used a computer for 30

minutes to an hour every day. (Tr. 268.)  She worked on a clothing business.  (Tr. 468.)

Although plaintiff argues that the ALJ should have considered "the quality" of those activities, substantial evidence on the record as a whole supports the ALJ's determination that a claimant who engages in substantial daily activities such as obtaining a pilot's license and becoming a member of ski patrol, writing and promoting books, starting a clothing business, and traveling to Switzerland, Las Vegas, Sonoma and Maui does not suffer from disabling mental impairments. "The inconsistency between [plaintiff's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility." *Vance v. Berryhill*, 860 F.3d 1114,1121 (8th Cir. 2017).  Finally, the ALJ credited plaintiff's assertion that she was better able to function when she did not engage in "stressful activities," and accordingly limited her to simple, routine tasks with no fast-paced production requirements.  (Tr. 263.)

The medical evidence of record also supports the ALJ's findings and was properly considered by the ALJ as one factor when assessing plaintiff's credibility and evaluating her subjective complaints.  *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints).   Because plaintiff applied for benefits on or after March 27, 2017, the ALJ applied new regulations for evaluating medical

evidence that focus on the persuasiveness of medical opinions using five factors:

(1) supportability; (2) consistency; (3) relationship with the claimant; (4)

specialization; and (5) other factors.  20 C.F.R. § 404.1520c(a)-(c).  The factors of

supportability and consistency are the two most important factors in determining

the persuasiveness of a medical opinion.  20 C.F.R. § 404.1520c(b)(2).

The ALJ relied on the opinion of Dr. Andert, who reviewed plaintiff's

medical records and testified at the second hearing.  (Tr. 33-40.)  Dr. Andert

testified that plaintiff could perform simple, unskilled work.  (Tr. 35.)  Dr. Andert

noted that although plaintiff could not perform fast-paced work such as on an

assembly line, she could fulfill a daily quota of productivity.  (Tr. 35.)   He also

testified that while bipolar disorder can cause variability of functioning, the record

did not contain evidence of any deterioration of plaintiff's functioning requiring

intensive treatment such as emergency care or increased psychiatric care.  (Tr. 37.)

Dr. Andert noted that plaintiff's treatment was limited to medication management

and outpatient visits. (Tr. 37.)  Finally, Dr. Andert stated that plaintiff appeared to

reliably attend her medical appointments.  (Tr. 38.)  Dr. Andert testified that

although plaintiff would have some variability in her functioning, she would be

able to "maintain a schedule at a basic simple level of work complexity." (Tr. 38.)

The ALJ found Dr. Andert's opinion persuasive because it was supported by

plaintiff's numerous activities of daily living and normal mental status

examinations. (Tr. 21.)  It was also consistent with her conservative treatment.
(Tr. 21.)

The ALJ also relied on the opinion of Dr. Buban, who completed a mental
source statement of plaintiff's ability to perform work-related activities and
answered interrogatories on June 21, 2019.  (Tr. 522-37.)  After reviewing the
record and summarizing the evidence, including plaintiff's treatment notes from
Dr. Kachigian, Dr. Buban determined that plaintiff had mild limitations interacting
with others and adapting or managing herself, and no limitations understanding,
remembering, and applying information and concentrating, persisting, or
maintaining pace.  (Tr. 527-36.)  Dr. Buban explained that plaintiff primarily
addressed psychosocial stressors in treatment, including divorce, relocation, and
family stressors.  (Tr. 535.)  Dr. Buban also noted that plaintiff was active writing
and promoting books, riding horses, volunteering, meeting with friends, obtaining
a pilot's license, and traveling.  (Tr. 535.)  In addition, in responding to
interrogatories posed by plaintiff's counsel, Dr. Buban stated there was no
evidence in the file to support a finding that plaintiff's symptoms produced
"severely unpredictable episodes," as there was no crisis intervention, emergency
department presentations, or hospitalizations.  (Tr. 544.)

Plaintiff claims that in assessing her subjective complaints, the ALJ
inappropriately relied on temporary periods of improvement and ignored the

cyclical nature of her impairment.  But, as discussed above, the ALJ weighed the evidence as a whole and concluded that plaintiff was mostly able to function despite her stressors, and he substantially modified her RFC to account for her credible non-exertional limitations.  In so doing, he did not simply adopt wholesale the opinion of Dr. Buban, which he concluded was only partially persuasive.

Instead, he formulated an RFC based on the evidence as a whole.  For example, because the record as a whole demonstrated that plaintiff's stressors often involved interacting with family and friends, the ALJ concluded that plaintiff had a moderate limitation in interacting with others, despite her abundance of social activities.  Therefore, despite Dr. Buban's finding that plaintiff had no limitation in the area of interacting with others, the ALJ limited plaintiff to jobs with no contact with the public and only casual and infrequent contact with co-workers and occasional contact with supervisors.  He also limited plaintiff to jobs involving only simple, routine and repetitive tasks to avoid stressful situations that could trigger her symptoms.  Relying on Dr. Andert's opinion, the ALJ precluded plaintiff from fast-past production work.  Finally, although Dr. Buban opined that plaintiff had no workplace restrictions for concentration, persistence, or pace, the ALJ concluded that such limitations were necessary "out of an abundance of caution" to avoid triggering plaintiff's symptoms.

Plaintiff argues that the ALJ substituted his own medical opinion for that of medical source providers when he stated that plaintiff's mental status examinations were "fairly normal." However, the ALJ did not simply rely on his own interpretation of these examination results.  Dr. Buban characterized plaintiff's mental status examinations as "mostly normal."  (Tr. 544.)  Plaintiff's mental status examinations with Dr. Cho during the relevant time period revealed normal range of affect, intact memory and concentration, with an "okay" mood, fair insight, and "superficially appropriate" judgment, and slightly loud, overproductive speech but with regular rate and rhythm.  (Tr. 472, 474, 476, 478, 480, 482.)  Here, after summarizing the objective medical evidence of record the ALJ properly concluded that plaintiff's subjective allegations regarding her the severity of her limitations were of limited credibility because they were not supported by the objective medical evidence of record, an important factor for evaluating a claimant's credibility.  *Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir. 1995).

Plaintiff contends that remand is required because the ALJ relied on Dr. Buban's interpretation of Dr. Kachigian's treatment notes, which plaintiff characterizes as illegible.  While these notes are handwritten and difficult to decipher in spots (Tr. 331-461, 552-59), they are not "illegible" as Dr. Buban was able to review and summarize those records, and plaintiff points to no specific error in Dr. Buban's (or the ALJ's) summary of Dr. Kachigian's treatment notes.

20

(Tr. 527-36.)[5]  Moreover, the ALJ relied on other treatment notes from plaintiff's psychiatrists, including Dr. Cho, that amply support his RFC determination.  (Tr. 322-30, 468-505.)  It is ultimately plaintiff's burden to establish her RFC, and she failed to carry this burden by producing any evidence that her RFC should be more limited based upon Dr. Kachigian's treatment notes.[6]  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Plaintiff also points to other evidence in the record that she claims supports a finding of disabling limitations.  Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing her daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination.  *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017);  *McNamara*, 590 F.3d at 610.  Here, the ALJ discounted plaintiff's subjective complaints only after evaluating the entirety of the record.  Where, as here, an ALJ seriously considers but for good reasons explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).

---

[5] Nor does Dr. Kachigian contend that Dr. Buban's interpretation of her notes is inaccurate, despite being provided with Dr. Buban's opinion and an opportunity to respond to Dr. Buban's findings.  Under these circumstances, plaintiff can point to no error requiring remand.

[6] As will be discussed below, Dr. Kachigian claims that her treatment notes intentionally do not support her opinion of plaintiff's limitations.

In this case, the ALJ thoroughly evaluated all of evidence of record and adequately explained his reasons for the weight given this evidence.  Substantial evidence in the record as a whole supports the ALJ's RFC and credibility determinations, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress*, 854 F.3d at 1021 (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

D.   Evaluation of Dr. Kachigian's Opinion

Plaintiff argues that the ALJ did not properly evaluate the opinion of Dr. Kachigian.  Dr. Kachigian completed a medical source statement on March 7, 2019, assessing limitations that essentially precluded plaintiff from performing even unskilled work.  (Tr. 463-67.)  She listed diagnoses of bipolar disorder and generalized anxiety disorder.  (Tr. 467.)  Dr. Kachigian stated that plaintiff was tearful and agitated with mood lability, insomnia, and anxiety.  (Tr. 467.)  She opined that plaintiff had marked interference in her ability to concentrate and persist at simple, routine tasks; initiate and complete tasks timely; ignore or avoid distractions; sustain an ordinary routine and regular attendance; use reason and judgment to make decisions; work a full day without unreasonable breaks; regulate emotions, control behavior, and maintain well-being in a work setting; keep social interactions free of excessive irritability, argumentativeness, and suspiciousness; and respond appropriately to supervisors.  (Tr. 464.)  Finally, Dr. Kachigian

22

believed that plaintiff would need to leave work early, be late, or miss work three times or more per month.  (Tr. 466.)

On January 7, 2020, Dr. Kachigian responded to Dr. Buban's opinion.  (Tr. 558-59.)  Dr. Kachigian stated that her treatment notes are "cursory, meant for private use and never intended to show evidence of [a] patient's disabilities."  (Tr. 558.)  She explained that her notes intentionally focused on plaintiff's "strengths, and not weaknesses, [and did not] document extremely personal or embarrassing situations as it is not necessary for therapy and may be harmful to [plaintiff] if read out of context or subpoenaed for any reason."  (Tr. 558.)  Dr. Kachigian stated that her "notes do not emphasize or necessarily reflect all the difficulties experienced by [plaintiff]" and that her experience with plaintiff "has not been detailed" fully in her notes.  (Tr. 558.)   However, Dr. Kachigian did not dispute Dr. Buban's summary or interpretation of her handwritten notes.  Instead, Dr. Kachigian stated that plaintiff had to work on her schedule and could only work "when she is up to it" due to the unpredictability of her symptoms.   (Tr. 559.)   According to Dr. Kachigian, "[t]here were multiple times when hospitalization was considered, but avoided because she had supportive people around her who could see her through these turbulent times that could last a week or longer, at a time."  (Tr. 559.)  She opined that if plaintiff was exposed to a trigger, then she could experience tears,

anxiety, and irritability, or possible episodes of self-injury, leaving her withdrawn or unable to perform daily tasks, or.  (Tr. 559.)

     The ALJ found that Dr. Kachigian's opinions concerning plaintiff's functioning were not consistent with her treatment notes or those from plaintiff's other providers. (Tr. 20.)  In evaluating the consistency and supportability of her opinion, the ALJ noted that Dr. Kachigian failed to account for plaintiff's mostly normal mental status examinations, the improvements she made with sleep and mood with medication adjustments, or the absence of any emergency treatment or hospitalization.  (Tr. 20, 328, 333, 468, 472, 474, 476, 478, 480, 490, 492, 494, 496, 498, 569-73.)  In addition, the ALJ noted that her opinion was inconsistent with plaintiff's extensive and varied activities, such as pilot training, volunteering as a rescue worker during ski season, and traveling extensively.  (Tr. 50, 70, 361, 364, 418, 436, 468, 556.)

     In challenging the ALJ's assessment of Dr. Kachigian's opinion, plaintiff reiterates her argument that the ALJ cannot assess the meaning of mental status examination findings.  However, as previously stated the ALJ relied on Dr. Buban's characterization of the examinations as "mostly normal, " as well as the results of the examinations by Dr. Cho.  Similarly, although plaintiff complains that the ALJ improperly considered plaintiff's lack of hospitalizations and activities as evidence that she was not disabled, Dr. Buban and Dr. Andert also

24

cited those factors to support their opinions.  (Tr. 33-39.)  Remand is not required merely because plaintiff may disagree with the ALJ's weighing of the evidence or can point to some evidence in the record which may support her position.  *See Fentress*, 854 F.3d at 1021.

Although plaintiff believes that the ALJ should have assessed the medical evidence differently to support greater limitations or found Dr. Kachigian's medical opinion more persuasive, it is not my role to reweigh the medical evidence considered by the ALJ in his determination of plaintiff's RFC.  *Hensley*, 829 F.3d at 934.  It is the duty of the ALJ to weigh conflicting evidence and to resolve disagreements among medical opinions.  *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).  Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority."  *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citing *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005)).

Here, the ALJ evaluated all of the medical evidence of record and adequately explained his reasons for the weight given this evidence in a manner consistent with the new regulations.  Under these circumstances, the ALJ did not err in failing to find Dr. Kachigian's opinion persuasive, particularly where her own treatment notes (and the remaining evidence of record) did not support her opinions, and the proffered explanation was that such consistency was "not necessary."  (Tr. 558.)

In this case, good reasons and substantial evidence in the record as a whole support the ALJ's determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress*, 854 F.3d at 1021 (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2022.

27